[No. G038003. Fourth Dist., Div. Three. Dec. 12, 2007.]

AMANDA MITRI et al., Plaintiffs and Respondents, v.
ARNEL MANAGEMENT COMPANY et al., Defendants and Appellants.

COUNSEL

Paul, Hastings, Janofsky & Walker, Michael A. Hood, Sherri Fanger McInnes and Karin K. Sherr for Defendants and Appellants.

Law Office of Patricia Grace and Patricia J. Grace for Plaintiffs and Respondents.

OPINION

FYBEL, J.—

## INTRODUCTION

Plaintiffs Amanda Mitri[1] and Eric Eppel (plaintiffs) sued their former employer, Arnel Management Company (Arnel), Arnel's owner, George Argyros, and Arnel supervisors Steve Mensinger, Ole Olson, and Leslie Holis (collectively, defendants) for, inter alia, sexual discrimination and harassment.[2] Defendants filed a motion to compel arbitration of plaintiffs' claims on the ground plaintiffs had each signed a binding arbitration agreement. The trial court denied the motion based on defendants' failure to prove the existence of any such agreement to arbitrate. Defendants contend the trial court erred by denying their motion.

██ We affirm. Arnel's employee handbook states, "[a]s a condition of employment, all employees are required to sign an arbitration agreement" and further states, "[e]mployees will be provided a copy of their signed arbitration agreement." Defendants have not produced evidence of signed arbitration agreements. Defendants nevertheless contend the handbook's reference to arbitration is sufficient to force plaintiffs to arbitrate their claims. As discussed in detail *post*, defendants' argument is wholly without factual or legal merit.

## BACKGROUND

Plaintiffs filed a complaint against defendants containing claims for (1) sexual discrimination and harassment, (2) failure to prevent sexual discrimination and harassment, (3) retaliation for opposing sexual discrimination

---

[1] Although the complaint and other documents filed in this action spell this plaintiff's last name "Metri" instead of "Mitri," documents in the record show the latter spelling is correct.

[2] The complaint also named Merideth Katz as a defendant. The record does not show whether Katz was ever served in this action. Because Katz was not a moving party with regard to defendants' motion to compel the arbitration agreement, we do not further refer to her.

and harassment, (4) invasion of privacy, and (5) defamation. Defendants filed a motion to compel arbitration and stay the proceedings on the grounds (1) each plaintiff had entered into a written arbitration agreement with Arnel, which required binding arbitration of "any controversy or dispute arising from, or in any way relating to an offer of employment or the position, work, payment or relationship, or the termination of such employment"; and (2) the claims in the complaint " 'arise from' " or are " 'related to' " plaintiffs' employment.

In support of the motion, defendants submitted the declaration of Arnel's director of claims administration, Fola Linebarger, in which she stated, "[i]t is Arnel's business practice to require all employees to sign an arbitration agreement prior to or upon commencement of employment with Arnel and to maintain a signed copy of such agreement in each employee's personnel file. I have custody of the personnel files for both Amanda Mitri and Eric Eppel, and Arnel maintains these files in the ordinary course of business. Attached hereto as Exhibits 'A' and 'B' are true and accurate copies of the arbitration agreements that are maintained in Ms. Mitri's and Mr. Eppel's personnel file."

Exhibit A consists of two documents. First, it contains what appears (based on the footer at the bottom of each page) to be a copy of pages 6 and 7 of the Arnel employee handbook, as revised on September 17, 2004. Pages 6 and 7 contain a section entitled "1.18 Arbitration Agreement," which states: "Any dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration. As a condition of employment, all employees are required to sign an arbitration agreement. [¶] To ensure the expeditious and economical resolution to any controversy or dispute arising from, or in any way relating to an offer of employment or the position, work, payment or relationship, or the termination of such employment, will be on the written request by any party, be submitted to and resolved by binding arbitration. Said arbitration will be conducted by the American Arbitration Association in Orange County, California. The Company will share equitably such expenses associated with the arbitration process. The prevailing party in the arbitration shall be awarded its attorney's fees incurred in the arbitration process and the decision of the arbitrator shall be final, binding and non-appealable. [¶] Further, nothing in this policy is intended to prevent either you or the Company from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. You, as the employee and the Company each have the right to resolve any issue or dispute involving company trade secrets, invention rights, non-competition and non-solicitation

by court action in lieu of arbitration. [¶] Employees will be provided a copy of their signed arbitration agreement." There is no "signed arbitration agreement" in the exhibit.

Exhibit A also contains a document entitled "Acknowledgment Receipt [¶] *Employee Handbook*" which states: "This Employee Handbook is designed to acquaint new employees, and reacquaint existing employees, with Human Resource policies, operational issues, employee services, and benefits that reflect the desire to provide a professional work environment. The Handbook is an excellent resource for employees with questions about the Company. Employees are encouraged to carefully review the Employee Handbook and become familiar with the contents and periodic updates. [¶] The Company reserves the right to change or revise policies, procedures, and benefits described in this Handbook, other than the employment at-will provisions, without notice, at such times that the Company determines this action is warranted. [¶] My signature acknowledges that I have read and understood the statements above as well as the contents of the Handbook, and will direct any questions to my supervisor or the Director of Human Resources." The acknowledgment receipt form in exhibit A was signed by Mitri and dated October 14, 2004.

Exhibit B to Linebarger's declaration contains identical documents to those in exhibit A, but the acknowledgment receipt form in exhibit B was signed by Eppel and dated October 18, 2004. As with exhibit A, there is no "signed arbitration agreement" in exhibit B. Defendants requested that the trial court take judicial notice of the rules of the American Arbitration Association. Defendants did not submit any other evidence showing the existence of a mandatory arbitration agreement.

In opposition, plaintiffs each filed a declaration, in which they denied entering into an arbitration agreement with Arnel or ever being asked to do so. Both admitted "signing a receipt for the Arnel Management Company's Policy Handbook," but each stated, "I was not asked to read, nor was I given time to read, the Arnel Management Company's Policy Handbook and I did not know its contents."

The trial court issued the following tentative ruling before argument on defendants' motion: "The court is inclined to DENY this motion. The acknowledgment and receipt does not specifically cite the arbitration provision. Further, the handbook is not part of the contract of employment, because the policies in the handbook, including the arbitration provision, can be changed or revised without notice whenever the company determines it is warranted. The employee does not have reciprocal rights to amend the

handbook. [¶] Still further, the acknowledgment states that the employee has 'read and understood' the statements in the acknowledgment, which 'encourage the employee to carefully review . . . and become familiar with' the employee handbook. This implies that the review will take place after the receipt is signed. That can hardly be the basis for a binding election to arbitrate. [¶] The court recognizes that the acknowledgment also says that the employee has 'read and understood the statements above *as well as the contents of the Handbook.*' The court finds this to be ambiguous under the circumstances. Even if this is a promise that the employee read the handbook before signing (which is unclear), the declarations of the plaintiffs indicate that, in fact, they did not read the handbook before signing. Further, even if they *had* read the handbook, the handbook did not constitute an agreed term of the contract of employment."

Following argument on the motion, the trial court's tentative ruling became the final order of the court. Defendants timely appealed.

## DISCUSSION

The trial court's order denying defendants' motion to compel arbitration is appealable pursuant to Code of Civil Procedure section 1294, subdivision (a).[3] (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1711 [1 Cal.Rptr.3d 328].)

"[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine *whether the agreement exists* and, if any defense to its enforcement is raised, whether it is enforceable. *Because the existence of the agreement is a statutory prerequisite to granting the petition,* the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [58 Cal.Rptr.2d 875, 926 P.2d 1061], italics added.)

Defendants contend the trial court erred by denying their motion to compel arbitration because the written documentation they submitted established the existence of a binding arbitration agreement between each plaintiff and Arnel. The " '[i]nterpretation of a written document where extrinsic evidence is

---

[3] Code of Civil Procedure section 1294, subdivision (a) provides: "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration."

unnecessary is a question of law for independent review by the Court of Appeal. [Citations.]' " (*Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1158 [105 Cal.Rptr.2d 208]; see also *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].) We therefore review this issue de novo.

■ California contract law applies to determine whether the parties formed a valid agreement to arbitrate. (*Romo v. Y-3 Holdings, Inc., supra,* 87 Cal.App.4th at pp. 1158–1159; *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420 [100 Cal.Rptr.2d 818] ["General principles of contract law determine whether the parties have entered a binding agreement to arbitrate"].) General contract law principles include that "[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . 'The words of a contract are to be understood in their ordinary and popular sense.' [Citations.]" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505].) Furthermore, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)

■ Section 1550, subdivision 2, of the Civil Code establishes the rule that an essential component to a contract is the consent of the parties to the contract. (See *Lopez v. Charles Schwab & Co., Inc.* (2004) 118 Cal.App.4th 1224, 1230 [13 Cal.Rptr.3d 544].) Civil Code section 1565, subdivision 3 provides, "[t]he consent of the parties to a contract must be . . . [¶] . . . [¶] . . . [c]ommunicated by each to the other." (See *Romo v. Y-3 Holdings, Inc., supra,* 87 Cal.App.4th at p. 1158 [" 'There is no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate' "].)

Here, the documents submitted by defendants do not show either plaintiff ever consented to binding arbitration of claims arising out of the employment relationship with Arnel. The arbitration agreement provision in the employee handbook generally states an Arnel policy that "[a]ny dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration." The provision explains such an arbitration "will be conducted by the American Arbitration Association," and describes some of the parameters of such an arbitration (e.g., written request triggers arbitration, Arnel agrees to "equitably" share arbitration expenses, and prevailing party is awarded attorney fees). The arbitration agreement provision, however, does not stop there. It also states that pursuant to Arnel's policy, "[a]s a condition of employment, all employees are required to sign an arbitration agreement." This provision completely undermines any argument by defendants the provision in the handbook itself was intended to constitute an arbitration

agreement between Arnel and its employees. The provision further states, "[e]mployees will be provided a copy of their signed arbitration agreement"—thus reinforcing an intent to have employees sign a separate arbitration agreement to effectuate Arnel's policy of arbitrating employment claims. Defendants have not produced any evidence of the existence of such an arbitration agreement signed by either plaintiff.

Defendants cite *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11 [96 Cal.Rptr.2d 179, 999 P.2d 71] (*Asmus*) and *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 637 [69 Cal.Rptr.2d 300], for the proposition that "[i]n order [to] establish that [plaintiffs] assented to the arbitration agreement, it is only necessary for [defendants] to show that [plaintiffs] received a copy of the agreement and that [plaintiffs] continued to work after they received a copy of the agreement." Significantly, however, neither *Asmus* nor *DiGiacinto v. Ameriko-Omserv Corp.* addressed whether an arbitration agreement *existed* between an employer and employee.

*Asmus, supra,* 23 Cal.4th 1, arose in the context of an employer's discontinuance of a management employment security policy but did not involve an arbitration agreement. In *Asmus*, the California Supreme Court addressed the issue whether " '[o]nce an employer's unilaterally adopted policy—which requires employees to be retained so long as a specified condition does not occur—has become a part of the employment contract, may the employer thereafter unilaterally [terminate] the policy, even though the specified condition has not occurred?' " (*Id.* at pp. 5–6, fn. omitted.) In holding an employer could do so, the Supreme Court recognized that "California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment." (*Id.* at p. 11.) In *Asmus*, both parties agreed that the employees had accepted a unilateral contract by their performance. (*Ibid.*) Thus, the question in *Asmus* was whether the unilateral contract, once formed, could be unilaterally modified or terminated by the employer. (*Ibid.*)

In contrast, the core issue in this case, as framed by the motion to compel arbitration, is whether the documents prepared by Arnel show an express *bilateral* contract was entered into through which the parties agreed to arbitrate. As discussed *ante*, the documents do not. At oral argument on appeal, defendants argued plaintiffs accepted a unilateral contract to arbitrate by continuing to work for Arnel after their receipt of the employee handbook. But, as discussed *ante*, the employee handbook's arbitration provision only placed plaintiffs on notice that they would be called upon to sign a separate binding arbitration agreement, thereby contradicting defendants' argument the provision in the handbook and subsequent performance constituted a unilateral contract of binding arbitration. Defendants' argument on appeal does not

withstand legal or factual analysis and is fundamentally different from their position before the trial court. Indeed, the reply brief in support of the motion to compel arbitration, which defendants filed in the trial court, stated, "[p]laintiffs insist that the arbitration agreements are 'unilateral[,'] and therefore unenforceable. Not true. The arbitration agreements are expressly *mutual*—compelling both [p]laintiffs and [d]efendants to arbitrate 'Any dispute arising out of employment with the Company.' "

The issue presented in *DiGiacinto v. Ameriko-Omserv Corp., supra,* 59 Cal.App.4th 629, 631, was "whether the employer of an at-will employee is liable for breach of contract when the employer notifies the employee of a prospective change in his rate of compensation and thereafter the employee continues in employment." In concluding that an employer is not so liable, the appellate court noted, "the majority line of cases supports the proposition that as a matter of law, an at-will employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." (*Id.* at p. 637.)

Both *Asmus, supra,* 23 Cal.4th 1 and *DiGiacinto v. Ameriko-Omserv Corp., supra,* 59 Cal.App.4th 629, are inapposite because, as discussed *ante,* the arbitration agreement provision contained in the employee handbook here placed plaintiffs on notice that they would be required to enter into a separate arbitration agreement with Arnel. As this record shows, neither plaintiff entered into an arbitration agreement.

In their reply brief on appeal, defendants also cite *Craig v. Brown & Root, Inc., supra,* 84 Cal.App.4th 416, 420, in which the appellate court rejected an employee's contention the evidence was insufficient to show she entered a binding arbitration agreement with her employer. The court cited evidence the employer sent the employee a memorandum informing her of the employer's new dispute resolution program, emphasized "IT APPLIES TO YOU," and explained "[i]t will govern all future legal disputes between you and the Company." (*Id.* at p. 419.) Unlike the arbitration agreement provision in the Arnel employee handbook, the memorandum in *Craig v. Brown & Root, Inc.,* established in and of itself the employer's dispute resolution program, and did not include an express requirement that its employees sign an arbitration agreement. Therefore, *Craig v. Brown & Root, Inc.,* is inapposite.

Defendants also contend the signed arbitration agreement required by the arbitration agreement provision in the Arnel employee handbook was *impliedly* unnecessary to establish an arbitration agreement between Arnel and plaintiffs. However, such an interpretation of the arbitration agreement provi-

sion contradicts that same provision's *express* term requiring a signed agreement. (See *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374 [6 Cal.Rptr.2d 467, 826 P.2d 710] ["implied terms should never be read to vary express terms"]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 855, fn. 12 [57 Cal.Rptr.3d 363] [" '[i]t is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract' "].)

Defendants next argue the acknowledgment receipt form signed by each plaintiff constitutes evidence of each plaintiff's acquiescence to the arbitration agreement provision in the employee handbook. But the language of the acknowledgment receipt form relegates the employee handbook's status to "an excellent resource for employees with questions about the Company," and further states the employee handbook is "designed to acquaint new employees, and reacquaint existing employees, with Human Resource policies, operational issues, employee services, and benefits that reflect the desire to provide a professional work environment." The acknowledgment receipt form states, "[e]mployees are encouraged to carefully review the Employee Handbook and become familiar with the contents and periodic updates."

Conspicuously absent from the acknowledgment receipt form is any reference to an *agreement* by the employee to abide by the employee handbook's arbitration agreement provision. Indeed, the line preceding each plaintiff's signature on his or her respective acknowledgment receipt form explains, "[m]y signature acknowledges that I have read and understood the statements above as well as the contents of the Handbook, and will direct any questions to my supervisor or the Director of Human Resources."

We cannot and will not create a term of a contract between the parties that the evidence does not show was ever agreed upon by the parties. (Code Civ. Proc., § 1858 ["In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . ."].) Taken as a whole, the documents submitted by defendants in support of their motion do not constitute an arbitration agreement. We therefore conclude the trial court did not err by denying defendants' motion to compel arbitration. Because we conclude the documents submitted in support of defendants' motion do not constitute an agreement to arbitrate, we do not need to consider other grounds relied upon by the trial court in denying defendants' motion to compel arbitration.

## DISPOSITION

The order is affirmed. Respondents shall recover costs on appeal.

Moore, Acting P. J., and Ikola, J., concurred.