NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2177
_____

MICHAEL SCOTT,
                                        Appellant

v.

EDUCATION MANAGEMENT CORPORATION
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cv-00537)
District Judge:  Hon. David S. Cercone

_____

_____

No. 15-2225
_____

LAMONT JONES,
                                        Appellant

v.

EDUCATION MANAGEMENT CORPORATION

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cv-00536)
District Judge:  Hon. Nora B. Fischer
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 6, 2016

Before:   JORDAN, VANASKIE, and NYGAARD, *Circuit Judges*.

(Filed: October 18, 2016)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

In these consolidated appeals, two former employees of the Education Management Corporation ("EDMC") appeal from orders dismissing their separate claims of discrimination. The employees – Michael Scott and Lamont Jones – allege that EDMC discriminated against them in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and the Pennsylvania common law. In each case, the United States District Court for the Western District of Pennsylvania dismissed the discrimination claims in their entirety because it concluded that the claims were subject to binding arbitration. We disagree, and conclude that Scott and Jones never agreed to arbitrate these claims. Accordingly, we will vacate the orders of dismissal and remand for further proceedings.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

## I.    BACKGROUND[1]

Scott and Jones were employed as Assistant Directors of Admissions at the Art Institute of Pittsburgh, an EDMC subsidiary.  In July 2012, both men received what they described in their respective complaints – in the very same words – as "inexplicably harsh and unfair quarterly job evaluation[s]" that rated their job performance as "below expectations."  (JA 37-38, 53.)  In early August 2012, they both filed complaints with the Equal Employment Opportunity Commission ("EEOC"), Jones alleging race and age discrimination and Scott alleging only age discrimination.

Soon thereafter, in late September and early October 2012, EDMC instituted a company-wide alternative dispute resolution ("ADR") policy.  The ADR policy created a multi-step process for dispute resolution that culminated in binding arbitration.  The policy informed employees that it was "intended to create the exclusive means by which all work-related disputes between [EDMC] … and its employees will be promptly addressed and fairly resolved."  (JA 84.)  As to its scope, the ADR policy specifically stated that it applied to all "claims of employment discrimination, harassment, retaliation, wrongful termination or other alleged unlawful treatment [under] state, local or federal law."  (JA 84-85.)  The ADR policy further provided that "all such disputes [must] be

---

[1] Although these cases were consolidated on appeal, they proceeded separately in the District Court before different judges.  We will nonetheless recount their facts simultaneously, as there is significant overlap in the circumstances giving rise to each case – they each worked the same job for the same employer, allege similar discriminatory actions taken against them, and filed their nearly-identical complaints on the same day.  Also, because this appeal addresses only the validity of the arbitration agreements at issue, we do not consider the underlying facts of their discrimination claims.

resolved only through final and binding Arbitration and not by way of court or jury trial."

(JA 86.) It also stated that "continuing employment with the Company after receipt of

this Policy constitutes agreement to abide by its terms." (JA 84.)

Two months after filing their EEOC complaints, Scott and Jones were informed of

EDMC's new ADR policy in an automated email sent to all covered employees on

October 3, 2012.[2] The email emphasized that compliance with the ADR policy was a

term and condition of continued employment, and it requested that employees

acknowledge their receipt and acceptance of the new policy. That same day, Jones's

attorney – who now represents both Jones and Scott on appeal – sent an email to EDMC

expressing his client's belief that the ADR policy was "illegal" and "in flagrant violation

of the Civil Rights Act of 1964." (JA 685.) Jones amended his EEOC complaint the next

day, supplementing his previously-filed complaint and alleging that the ADR policy was

instituted in retaliation for it. Scott made the same amendment to his own EEOC

complaint.

Jones's employment with EDMC was terminated in January 2013, and Scott's was

terminated in April 2013. The EEOC determined there was insufficient evidence for it to

pursue either of the plaintiffs' cases and requested additional evidence from them. The

plaintiffs instead requested that the EEOC issue them right to sue letters, which it did.

---

[2] In September 2012, Scott had taken short-term disability leave, from which he did not return until December 2012. In his complaint, Scott says that upon his return in December he was then presented with the ADR policy and EDMC "demanded" that he sign it as a condition of his continued employment. (JA 38.) Scott says that he "resisted repeated pressure to sign it." (JA 39.)

4

Scott and Jones filed separate but simultaneous complaints, alleging that EDMC had discriminated and retaliated against them, in violation of the ADEA, Title VII, and Pennsylvania common law. After discovery, and on EDMC's motion, both cases were dismissed with prejudice,[3] solely on the basis that the discrimination claims fell within the terms of the company's ADR policy and that Scott and Jones had manifested their assent to the policy by continuing to work at EDMC after receiving it.

The plaintiffs filed timely notices of appeal, and the cases were consolidated on their joint motion.

## II.  DISCUSSION[4]

"We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010). We must first "determine which standard should have been applied" in the District Court – that governing a motion to dismiss or that governing motions for summary judgment.[5] *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013).

---

[3] In Scott's case, the District Court granted what EDMC styled as a motion to dismiss while "apply[ing] the … summary judgment standard" out of "an abundance of caution." (JA 10.)  In Jones's case, the District Court "adopt[ed] the reasoning set forth in" the previous dismissal order in Scott's case, as well as referencing a related case raising similar issues – *Masoner v. Educ. Mgmt. Corp.*, 18 F. Supp. 3d 652 (W.D. Pa. 2014). (JA 21.)

[4] The District Courts had jurisdiction under 28 U.S.C. § 1331.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291. *See Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 144 (3d Cir. 2015) ("[A]n order dismissing claims in favor of arbitration *is* immediately appealable because it is a final order." (original emphasis)).

[5] As we have previously stated,

In choosing between the two standards, we have held that, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate," the parties should proceed through discovery and we should entertain a motion to compel arbitration under the standard for assessing motions for summary judgment. *Id*. at 776. Because both of these cases have been through discovery, we will apply the summary judgment standard. Under that standard, the parties opposing arbitration, Scott and Jones, are entitled to "the benefit of all reasonable doubts and inferences that may arise." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009) (internal quotation marks omitted). We note, however, that neither party has asserted that any material facts

> the two standards differ in significant ways. The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any plausible reading of the pleadings, the plaintiff would be entitled to relief. We will affirm a district court's dismissal for failure to state a claim only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint. We consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.
>
> Under Rule 56, by contrast, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. In evaluating the motion, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Because summary judgment can be supported or defeated by citing a developed record, courts must give the parties adequate time for discovery.

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013) (internal citations, quotation marks, and ellipses omitted).

remain in dispute that would foreclose resolution of this appeal.  Accordingly, we turn to an assessment of the validity of the agreement to arbitrate.

"[A] party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009).  A disputed claim must be arbitrated if "there is a valid agreement to arbitrate between the parties," and "the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (internal quotation marks omitted).  "If a party challenges the validity … of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010).  Although it is well established that the Federal Arbitration Act ("FAA") reflects a "strong federal policy in favor of the resolution of disputes through arbitration," *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003), "this presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties," *Kirleis*, 560 F.3d at 160 (internal quotation marks omitted).  Whether such an agreement exists is a question of state contract law. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).  Under Pennsylvania law, which the parties agree governs both cases, a valid contract exists if: (1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there was an exchange of consideration. *Biddle v. Johnsonbaugh*, 664 A.2d 159, 163 (Pa. Super. Ct. 1995).

7

EDMC's motions to dismiss founder on the element of mutual assent.[6] The company argues that Scott and Jones impliedly agreed to the new policy because "[a]n employee's intent to agree to an ADR policy is manifested when the employee continues employment with the company after receiving an ADR policy that provides that continuing employment after receipt of the policy indicates acceptance of its terms." (Answering Br. at 29.) It appears that district courts within our Circuit have accepted that argument as a matter of Pennsylvania law.[7] In the present cases, however, we need not decide whether the argument is sound. Whatever the validity of EDMC's legal theory that continuing to work can, in and of itself, constitute implied assent to new terms of employment, that rule does not control the outcome here. In the employment context, an implied-in-fact contract may arise "by words and [be] inferred from circumstances, thus entailing consideration of factors such as oral representations, employee manuals, and

---

[6] EDMC says that the plaintiffs did "not raise an issue explicitly challenging th[e] core arbitrability ruling," and have therefore waived the issue. (Answering Br. at 26.) We disagree. Scott and Jones focused most of the attention in their briefing on their claim that the ADR policy was unenforceable because it was instituted in retaliation for their EEOC complaints, but they also emphasized that they had both "withheld assent to and protested the newly imposed ADR term of employment." (Opening Br. at 8.) They similarly noted their "immediate and continual rejection of, resistance to, and/or federally contesting of the imposition of the ADR policy and the ADR policy's retaliatory effect … ." (*Id*. at 16.) The plaintiffs repeatedly challenged the validity of the agreement to arbitrate elsewhere in their brief. We therefore do not consider this issue waived, and, indeed, view it as dispositive.

[7] *See, e.g.*, *Alexander v. Raymours Furniture Co.*, Civ. No. 13-5387, 2014 WL 3952944, at *5 (E.D. Pa. Aug. 13, 2014) (collecting cases); *see also Bauer v. Pottsville Area Emergency Med. Servs., Inc.*, 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000) ("Provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties." (internal quotation marks omitted)).

8

party conduct." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 943 (Pa. Super. Ct. 2011) (internal quotation marks omitted). When EDMC added the ADR policy, both Jones and Scott did indeed continue working. But they also promptly voiced their specific objection to and rejection of the ADR policy. Rather than indicate their assent, both men quite clearly expressed their strong disagreement with its terms. Giving further emphasis to their dissent, they both supplemented their complaints to the EEOC to allege that the ADR policy was an illicit act of retaliation by EDMC. On the facts here, it cannot be said that their continuing to work constituted an agreement to be bound by the new ADR policy. A contract cannot be implied when assent has been expressly disavowed. *See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 764 A.2d 587, 594 (Pa. Super. Ct. 2000) (rejecting the "legal conclusion that [the offeree] could assent by conduct to an offer it had already expressly rejected in writing").[8]

Were that not enough, Pennsylvania law requires that any agreement to arbitrate be "clear and unmistakable," and holds that "such agreements should not be extended by implication." *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964); *see also Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 287 (Pa. Super. Ct. 2005) ("[S]uch agreements are upheld only where it is clear that the parties have agreed to arbitrate in clear and unmistakable manner."). We have previously recognized that "under Pennsylvania law, explicit agreement is essential to the formation of an enforceable arbitration contract," so

---

[8] That conclusion is also consistent with the Restatement of Contracts. With limited exception not relevant here, "the rendering of a performance does not constitute an acceptance if within a reasonable time the offeree exercises reasonable diligence to notify the offeror of non-acceptance." Restatement (Second) of Contracts § 53 (1981).

9

any argument that an employee has "impliedly agreed to arbitrate h[is] claims must fail under Pennsylvania law." *Kirleis*, 560 F.3d at 163. EDMC has not suggested that this rule of heightened clarity unfairly targets arbitration clauses for invalidation, and we discern no reason in these cases why the Pennsylvania rule should not apply.

In granting EDMC's motions to dismiss, both District Courts here relied heavily upon *Masoner v. Education Management Corporation*, which dismissed a discrimination complaint against the same employer because of the applicability of the same ADR policy at issue now. 18 F. Supp. 3d 652 (W.D. Pa. 2014). In *Masoner*, however, the plaintiff employee "accepted and agreed to abide by all [of] EDMC's then-existing policies, including the ADR Policy at issue in this case." *Id*. at 656. The court emphasized that the plaintiff had "never asked any questions about the ADR Policy, expressed a desire to reject or challenge the terms of the ADR Policy, indicated that she found the terms of the ADR Policy to be unfair or oppressive, or made any effort to rescind her acceptance of the ADR Policy and its terms." *Id*. In the *Masoner* court's view, there had thus been "manifested a clear intention to be bound by the ADR Policy." *Id*. at 660. Here, in stark contrast, there was no such agreement. Indeed, there was an explicit disagreement by both Scott and Jones with the terms of the new policy. The object of the "mutual assent" inquiry is to discern "the intent a reasonable person would apprehend in considering the parties' behavior." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) (applying Pennsylvania law). On the record in these cases, it cannot rightly be said that either Scott or Jones demonstrated their

agreement to the terms of EDMC's ADR policy. It was therefore error for the District

Courts to have dismissed these cases on the basis of the alleged agreements to arbitrate.[9]

**III. CONCLUSION**

For the foregoing reasons, we will vacate the orders of dismissal and remand for

further proceedings consistent with this opinion.

---

[9] Because there was no valid arbitration agreement, we need not address any of the remaining arguments raised by the parties. In particular, Scott and Jones ask us to grant summary judgment in their favor. In the District Court, neither of their motions for summary judgment was addressed on its merits – Scott's motion was stricken as premature and Jones's motion was terminated as moot after EDMC's motion to dismiss was granted. We decline the plaintiffs' invitation to be the first court to address the merits of their summary judgment motions.