Filed 4/10/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ERIKA DIAZ,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>SOHNEN ENTERPRISES et al.,<br><br>    Defendants and Appellants. | B283077<br><br>(Los Angeles County<br>Super. Ct. No. BC644622) |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Fahey, Judge. Reversed with directions.

Wolflick & Simpson, Gregory D. Wolfick, David B. Simpson and Theodore S. Khachaturian for Defendants and Appellants.

Bruce Loren Karey for Plaintiff and Respondent.

_____

Sohnen Enterprises appeals from the denial of its motion to compel arbitration of claims brought by its employee, Erika Diaz. The record before this court demonstrates there was no evidence to support the denial; accordingly, we reverse with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

Erika Diaz, an employee of Sohnen Enterprises, filed a complaint alleging workplace discrimination on December 22, 2016. Twenty days earlier, on December 2, 2016, she and her co-workers received notice at an in-person meeting that the company was adopting a new dispute resolution policy requiring arbitration of all claims. At that meeting, according to the declaration of Marla Carr, the Chief Operating Officer of Sohnen, Carr informed all employees present, including Diaz, about the new dispute resolution agreement. She included in her explanation that continued employment by an employee who refused to sign the agreement would itself constitute acceptance of the dispute resolution agreement. According to Carr, she provided the explanation in English and Elaina Diaz, a human resources employee, explained the terms in Spanish. Diaz confirmed this in her own declaration, in which she stated that she discussed the terms in Spanish; she did not provide further details about the December 2 meeting. All employees received a copy of the agreement to review at home.

On December 19, 2016, representatives of the company met privately with Diaz, who had indicated to Elaina Diaz on December 14 that she did not wish to sign the agreement. Carr

and Diaz advised her again, in Spanish and English, that continuing to work constituted acceptance of the agreement.

On December 23, 2016, Diaz and her lawyer presented to Sohnen a letter dated December 20, 2016 rejecting the agreement but indicating that Diaz intended to continue her employment. On the same date, Diaz also served the complaint in this action.

On January 17, 2017, Sohnen sent a demand for arbitration to Diaz's counsel, based on the fact of Diaz's continued employment at the company. Counsel for Diaz did not reply. Sohnen filed its motion to compel arbitration in April. Diaz filed opposition in May. The trial court heard argument, and denied the motion.

The trial court, in its oral ruling, held that the agreement was a "take-it or leave-it contract and (*sic*) adhesion. There is no meeting of the minds." The court made no factual findings, nor did it address whether the agreement was substantively unconscionable.

## DISCUSSION

A. We Review The Ruling De Novo

The facts in the record are undisputed.[1] Accordingly, our review is de novo. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; *Flores v. Nature's Best*

---

[1] Respondent Diaz argues that she was off-work, due to illness, between December 17 and December 23, 2016. The record, however, contains no evidence to support that assertion; Diaz filed no declaration in opposition to the motion to compel, nor did any of the declarations filed present facts supporting the argument of counsel. We review based on the factual record before the trial court.

3

*Distribution, LLC* (2016) 7 Cal.App.5th 1, 9; *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787.)

B. The Record Demonstrates Consent to Arbitration

When presented with a petition to compel arbitration, the initial issue before the court is whether an agreement has been formed. (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 233 [133 S.Ct.2304, 2306, 186 L.Ed.2d 417] [arbitration is a matter of contract]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 ["""""a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit"""""].)

It is the party seeking to compel arbitration which bears the burden of proving the existence of the agreement. (*Rosenthal, supra*, 14 Cal.4th at p. 413.) In this case, Sohnen presented to the trial court evidence of the manner in which the agreement was presented to Diaz, and the actions which followed. This undisputed evidence was sufficient to meet Sohnen's burden.

California law in this area is settled: when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement. (*Pinnacle, supra*, 55 Cal.4th at 236; *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 383; *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420; cf. *Asmus v. Pacific*

4

*Bell* (2000) 23 Cal.4th 1, 11 [continued employment demonstrated implied acceptance of change in job security rules].)[2]

Diaz relies on *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, and *Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, arguing that these cases support the trial court's ruling.  Neither case, however, addresses the situation presented here; accordingly, neither supports the result below.

In *Mitri,* the employee acknowledged receipt of an employee handbook containing an arbitration provision, but the acknowledgement form did not reference or contain any agreement to comply with the arbitration provision.  (*Mitri, supra,* 157 Cal.App.4th at p. 1173.)  The general acknowledgment

_____

[2]     The dissent relies in part on three cases, two of which apply the law of other states, which come to a different conclusion.  The first, *Scott v. Education Management Corporation* (3d Cir. 2016) 662 Fed.Appx. 126 involved an arbitration agreement presented to the employee after a federal civil rights dispute arose.  The case was decided under Pennsylvania law which, according to the decision, requires an explicit agreement, not an implied agreement.  (*Id.* at p. 131)  The decision, by its own terms, does not constitute binding precedent.  In the second case, *Bayer v. Neiman Marcus Holdings, Inc.* (N.D.Cal. Nov. 8, 2011, No. CV 11-3705 MEJ) 2011 WL 5416173, a court in the Northern District of California, acknowledging that under California law an employee could either expressly consent to a new arbitration agreement or be bound by continuing to work after it was presented, found that the terms of the agreement before it required a signature to be effective.  Finally, in *Kunzie v. Jack-In-The-Box, Inc.* (Mo.Ct.App. 2010) 330 S.W.3d 476, 486, the court held that, under Missouri law, the assent of an employee cannot be implied where the employee has continued to work after a change in conditions of employment was presented.

5

stands in distinction to the express explanation provided twice to Diaz: that continued employment would itself be a manifestation of agreement to the arbitration provisions.

In *Gorlach,* the handbook provided to employees contained an express signature requirement for the arbitration agreement: "[T]he handbook told employees that they must sign the arbitration agreement, implying that it was not effective until (and unless) they did so. Because Gorlach never signed the arbitration agreement, we cannot imply the existence of such an agreement between the parties." (*Gorlach, supra*, 209 Cal.App.4th at p. 1509.) Here, there was no such implication because Diaz was told that her continued employment was sufficient.

Moreover, unlike Diaz, Gorlach left her employment to avoid the arbitration obligation. (*Gorlach, supra*, 209 Cal.App.4th at p. 1508.) The uncontradicted evidence in this record demonstrates that Diaz maintained her employment status between December 2 and December 23, and remained an employee at the time of the hearing in this case. As a result, she was already bound by the arbitration agreement before the presentation of the letter indicating both her rejection of the agreement and her intent to remain employed. Although Diaz now asserts that this forced Sohnen to choose whether to proceed without arbitration, this is incorrect. At most, the letter was an attempt to repudiate the agreement. (See, e.g. *Taylor v. Johnston* (1975) 15 Cal.3d 130, 137 [express repudiation requires clear and unequivocal refusal to perform]; *Mammoth Lakes Land*

6

*Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191
Cal.App.4th 435, 463 [same].)[3]

In any event, because the employment agreement between
Diaz and Sohnen was at-will, Sohnen could unilaterally change
the terms of Diaz's employment agreement, as long as it provided
Diaz notice of the change. "[I]t is settled that an employer may
unilaterally alter the terms of an employment agreement,
provided such alteration does not run afoul of the Labor Code.
[Citations.]" (*Schachter v. Citigroup* (2009) 47 Cal.4th 610, 619.)
"The at-will presumption authorizing an employer to discharge or
demote an employee similarly and necessarily authorizes an
employer to unilaterally alter the terms of employment, provided
that the alteration does not violate a statute or breach an implied
or express contractual agreement." (*Id.* at p. 620; see also
*DiGiancinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629,
636-637 [in adopting the majority view of at-will contracts, the
court stated "[T]the majority line of cases supports the
proposition that as a matter of law, an at-will employee who
continues in the employ of the employer after the employer has
given notice of changed terms or conditions of employment has
accepted the changed terms and conditions. Presumably, under
this approach, it would not be legally relevant if the employee
also had complained, objected, or expressed disagreement with
the new offer; as long as the employee continued in employment

---

**3**     Neither party has briefed the issue of repudiation, and the
potential effect of an attempted repudiation on the rights of the
parties is not before this court.

7

with notice of the new terms, the employee has no action for breach of contract as a matter of law."].)

### C. Diaz Has Not Demonstrated That The Arbitration Agreement Is Unenforceable

Once the party seeking arbitration has established that a binding agreement was formed, as Sohnen did here, the burden shifts to the party opposing arbitration to demonstrate the agreement cannot be enforced. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Rosenthal, supra*, 14 Cal.4th at pp. 409-410.)

A showing that an agreement is unconscionable can bar enforcement. The doctrine has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243.) Both elements must be present for a court to refuse enforcement. (*Ibid.;* see also *Pinnacle, supra*, 55 Cal.4th at p. 246 [both elements must be present, but there is a sliding scale; if more of one element is shown, less of the other need be present].)

The trial court found that the contract was adhesive in nature, but that finding, standing alone, is not sufficient. (See *Baltazar, supra*, 62 Cal.4th at p. 1245 ["[t]he adhesive nature of the employment contract requires us to be 'particularly attuned' to her claim of unconscionability [citation], but we do not subject the contract to the same degree of scrutiny as '[c]ontracts of adhesion that involve surprise or other sharp practices.'"].)

8

This record contains no evidence of surprise, nor of sharp practices demonstrating substantive unconscionability.  While Diaz argues in the introduction to her briefing that the agreement is substantively unconscionable, she fails to specify, with appropriate citations to the record and relevant legal authority, any terms of the agreement that she believes are unconscionable.  Accordingly, Diaz has waived any argument that the agreement is unenforceable.  (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 599-600 [parties must present legal authority for all arguments made]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [party raise or support issues by argument and citation to authority]; *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [parties must make coherent argument and cite authority in support of a contention; failure to do so waives the issue on appeal].)

## DISPOSITION

The order denying the petition to compel arbitration is reversed and the matter is remanded for the trial court to conduct further proceedings consistent with this opinion.  Appellant is to recover its costs on appeal.


ZELON, Acting P. J.

I concur:



FEUER, J.

9

SEGAL, J., Dissenting.

I agree an employee can impliedly accept an arbitration agreement by continuing to work for his or her employer. I also think an employee, like any other contracting party, can reject an arbitration agreement offered by an employer and yet continue to work for the employer. Whether an employer and an employee entered into an implied agreement regarding the terms of employment is a factual issue we routinely ask a trier of fact to decide in employment cases. Because the facts in this case do not support only one reasonable conclusion, I would defer to the trial court's resolution of that factual issue.

"The issue of an implied agreement or consent is ordinarily a factual question to be resolved by the trier of fact." (*Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 618, fn. 11; see *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 677 [whether the parties' conduct created an implied agreement is generally a question of fact]; *Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1189 ["The existence and scope of implied-in-fact contracts are determined by the totality of the circumstances. [Citation.] 'The question whether such an implied-in-fact agreement exists is a factual question for the trier of fact unless the undisputed facts can support only one reasonable conclusion.'"]; *Unilab Corp. v. Angeles-IPA* (2016) 244 Cal.App.4th 622, 636 ["Whether an implied contract exists ""is usually a question of fact for the trial court. Where evidence is conflicting, or where reasonable conflicting inferences may be drawn from evidence which is not in conflict, a question of fact is presented for decision of the trial court.""""]; *Kashmiri v. Regents of University of California* (2007)

156 Cal.App.4th 809, 829 ["the question whether the parties' conduct creates . . . an implied agreement is generally "'a question of fact'"'"].) In the arbitration context, while "California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment," whether "employment policies create unilateral contracts is 'a factual question in each case.'" (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1508, quoting *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11.)

Because we are reviewing the trial court's resolution of a factual issue, I would not apply, as the majority does, a de novo standard of review. Indeed, I would not even apply a substantial evidence standard of review. I think the standard of review is much more onerous on the appellant in this case.

As the majority acknowledges, Sohnen had the burden of proving the existence of the implied arbitration agreement. (Maj. opn. at p. 4; see *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 ["[t]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement"]; *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 859 [same].) The trial court found Sohnen failed to meet its burden. In this situation, we do not review the record to determine whether substantial evidence supports the trial court's finding, but whether the evidence compels the opposite finding as a matter of law. Thus, where the trier of fact, here the trial court ruling on a motion to compel arbitration, "'expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial

2

evidence supports the judgment. . . .  [¶]  [W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord, *Glovis America, Inc. v. County of Ventura* (2018) 28 Cal.App.5th 62, 71; *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734.)  For this reason, "'[w]here, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing plaintiff, we presume the trial court found the plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof.  [Citations.]  We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.'"  (*Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270.)

The evidence does not compel a finding Diaz and Sohnen impliedly agreed to arbitrate.  The evidence shows Diaz attended a meeting on December 2, 2016, where Marla Carr, Sohnen's chief operating officer, and Eliana Diaz, an employee in the human resources department, announced the company was implementing a new arbitration policy.  Carr and Eliana Diaz gave the employees copies of the new dispute resolution agreement, "in English and Spanish, to take home and review."

3

Eliana Diaz and Carr, however, had different recollections of the chronology of events. Eliana Diaz did not state in her declaration that employees were told on December 2, 2016 that, even if they refused to sign the arbitration agreement, continuing to work at the company would constitute acceptance of the agreement. Eliana Diaz stated it was not until December 19, 2016 that, during a private meeting with Diaz, she read Diaz a document stating, "If you continue working for Sohnen Enterprises on or after December 20, 2016, your actions will be viewed just as if you signed the [arbitration agreement]." Eliana Diaz also stated in her declaration that, in the meantime, Diaz told her on December 14, 2016 she would not sign the arbitration agreement. Eliana Diaz also said that on December 23, 2016 Sohnen received a letter from Diaz's attorney dated December 20, 2016 again rejecting the arbitration agreement. The letter from counsel for Diaz stated: "This letter will serve as a formal response [to], and *rejection* of, the attempt at obtaining Ms. Erika Diaz'[s] agreement to forced arbitration as set forth in an agreement presented to her on, or about, 12-2-16." The letter also stated that Diaz "intends to, and will continue, with [*sic*] her employment by Sohnen Enterprises on all the terms, and conditions, of her employment in effect prior to the presentation to her of the [arbitration agreement]."

On the other hand, Carr stated in her declaration that at the December 2, 2016 meeting she "explained in English the basic terms of the [arbitration agreement]" and "[s]pecifically" told the employees that "continued employment would constitute acceptance" of the agreement. The documentary evidence, however, does not support this statement in her declaration. The memorandum advising Diaz that Sohnen would consider

4

continued employment as acceptance is dated December 19, not December 2. In addition, the December 19 memorandum suggests that it was the first time the company had made this statement and that Diaz had until the next day to decide (presumably demonstrated by continuing to work, because Diaz had already said she was not going to sign the arbitration agreement) whether she would agree to the arbitration provision. The document states: "*This memo is to inform you* that if you continue working for Sohnen Enterprises on or after December 20, 2016, you will be deemed for all purposes to have accepted the terms of the [arbitration agreement]." (Italics added.) Counsel for Diaz wrote his letter the next day.

This evidence created factual disputes and supported different reasonable conclusions about what happened and whether Diaz impliedly agreed to Sohnen's proposed arbitration agreement. The trial court resolved this conflict in favor of Diaz and ruled the parties did not reach an implied agreement to arbitrate. The court stated, "You can't have an agreement where one side says, 'This is the deal,' and the other side says, 'No, this is not the deal,'" and the court found "there [was] no meeting of the minds." We do not have the authority to reweigh the evidence and come to a different conclusion, let alone conclude the evidence compels a finding the parties did enter into an implied agreement.

There was also a conflict in the evidence concerning whether the employees needed to sign the arbitration agreement in order to accept it. The arbitration agreement stated it had to be accepted in writing: "[B]y my signature below . . . I agree to comply with and be bound by this Agreement." But Carr stated she told the employees they could accept the arbitration

5

agreement, even if they did not sign it, by continuing to work there.  Which was it?  Again, the trial court resolved this conflict against Sohnen and found Diaz did not accept the agreement, a finding we should respect on appeal.  (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 337 ["Where there is no express agreement, the issue is whether other evidence of the parties' conduct has a 'tendency in reason' (Evid. Code, § 210) to demonstrate the existence of an actual mutual understanding on *particular* terms and conditions of employment.  If such evidence logically permits conflicting inferences, a question of fact is presented."].)  The trial court's ruling was also consistent with California cases holding that courts will not imply an employee's consent to an arbitration agreement where the agreement requires the employee's signature to be effective.  (See *Gorlach v. Sports Club Co., supra,* 209 Cal.App.4th at p. 1509 [court would not "imply the existence of [an arbitration] agreement" where "the handbook told employees that they must sign the arbitration agreement, implying that it was not effective until (and unless) they did so," and the employee "never signed the arbitration agreement"]; *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1172-1173 [no implied agreement to arbitrate where the agreement's "*express* term requir[ed] a signed agreement"].)

None of the cases the majority or Sohnen cites involved a plaintiff who expressly rejected the arbitration agreement, as Diaz did here twice (once orally and once in writing).  (See *Scott v. Education Management Corporation* (3d Cir. 2016) 662 Fed.Appx. 126, 130-131 [continuing to work did not constitute an implied agreement to an arbitration provision where the employees "promptly voiced their specific objection to and

6

rejection of the ADR policy" and, "[r]ather than indicate their assent, both men quite clearly expressed their strong disagreement with its terms"]; *Bayer v. Neiman Marcus Holdings, Inc.* (N.D.Cal. Nov. 8, 2011, No. CV 11-3705 MEJ) 2011 WL 5416173, at p. 5 [employee did not impliedly agree to an arbitration agreement where the employee refused to sign the arbitration agreement and told his supervisors he was not agreeing to the employer's arbitration program]; *Kunzie v. Jack-In-The-Box, Inc.* (Mo.Ct.App. 2010) 330 S.W.3d 476, 486 [employee's "rejection [of an arbitration agreement] and continued employment, under basic contract principles, reasonably could be viewed as [the employee's] counteroffer to [the employer] that [the employee] would continue his employment without being subject to [the employer's] arbitration policy," and the employer's "failure to then terminate [the employee's] employment could be deemed to constitute an acceptance of such counter-offer"].) Presented with evidence of those two express rejections and, at most, 18 days (December 2 to December 20, 2016) of continued employment, the trial court was entirely justified in giving the former more weight than the latter, and we should defer to that finding. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385 [trial courts "generally are in a better position to evaluate and weigh the evidence"]; *Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1562 ["'[i]t is the exclusive function of the trial court to weigh the evidence, resolve conflicts and determine the credibility of witnesses'"]; see also *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711, fn. 3 ["that the trial court's findings were based on declarations and other written evidence does not lessen the deference due those findings"]; *Ramos v. Homeward*

7

*Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1441 ["we defer to factual determinations made by the trial court when the evidence is in conflict, whether the evidence consists of oral testimony or declarations"]; *Poniktera v. Seiler* (2010) 181 Cal.App.4th 121, 130 ["we resolve all conflicts in favor of the judgment, even when (as here) the trial court's decision is based on evidence received by declaration rather than by oral testimony"].)

The cases the majority cites are also factually distinguishable. *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC, supra*, 55 Cal.4th 223 did not involve an implied agreement to arbitrate, by conduct or otherwise. In that case there was a written arbitration agreement in the applicable CC&Rs. (*Id.* at p. 231.) The court in *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416 held the employee's continued employment constituted acceptance of an arbitration agreement her employer had proposed. (*Id.* at pp. 420-421.) But the employee in that case continued to work at the company for four years (*id.* at pp. 418, 421), without ever saying a word about the arbitration agreement, whereas Diaz continued to work at Sohnen one day or 18 days and expressly rejected the arbitration agreement twice. And in *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373 the employer gave the employee the arbitration agreement when the employee began working full time, and the employee worked at the company for at least a year (and perhaps three)[1] before the company terminated his

---

[1]    The defendant in *Harris* terminated the plaintiff's employment in December 2013. (*Harris v. TAP Worldwide, LLC*, *supra*, 248 Cal.App.4th at p. 376.) The new arbitration policy went into effect in January 2010. (*Id.* at p. 379.) The plaintiff stated he signed the acknowledgement of receipt of the

employment. (*See id.* at pp. 376-377.) Again, a far cry from the (at most) 18 days Diaz continued to work at Sohnen before she rejected the agreement in writing.

Neither *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610 nor *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, both cited by the majority, involved an arbitration agreement, express or implied. (See *Gorlach v. Sports Club Co.*, *supra*, 209 Cal.App.4th at p. 1510 ["*DiGiacinto v. Ameriko-Omserv Corp.* [did not] address[ ] whether an arbitration agreement *existed* between an employer and employee"]; *Mitri v. Arnel Management Co.*, *supra*, 157 Cal.App.4th at p. 1171 [same].) Certainly, as the majority points out (maj. opn. at p. 7), "California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment." (*Asmus v. Pacific Bell*, *supra*, 23 Cal.4th at p. 11.) But here the evidence was disputed whether Sohnen made such a unilateral change in the terms of Diaz's employment. There was some evidence Sohnen intended to implement arbitration unilaterally, which Diaz could accept by continued employment, but there was also evidence Sohnen intended to implement arbitration as part of a bilateral agreement, which, as stated, Diaz could accept by signing the agreement. Indeed, the language of the arbitration agreement suggested that the parties were intending to exchange mutual promises, not that Sohnen was implementing arbitration unilaterally. The arbitration agreement states, "By this Agreement, *you and Sohnen Enterprises . . . agree* to resolve by

---

documents containing the arbitration provision in September 2012, "but the year was erroneously listed as 2010." (*Id.* at p. 377.)

arbitration any and all disputes arising out of or related to your employment by [Sohnen]." (Italics added.) The agreement also states, *"By mutually agreeing to arbitrate* covered disputes, we both recognize that these disputes will not be resolved by a court or jury." (Italics added.) (See *Bleecher v. Conte* (1981) 29 Cal.3d 345, 350 ["[a] bilateral contract is one in which there are mutual promises given in consideration of each other"].) The trial court again resolved these factual issues in favor of Diaz. (See *Asmus*, at p. 11 ["whether employment policies create unilateral contracts will be a factual question in each case"]; *Davis v. Jacoby* (1934) 1 Cal.2d 370, 378 [in many cases, "whether the particular offer is one to enter into a bilateral or unilateral contract" depends on "the intent of the offerer and the facts and circumstances of the case"].)

Finally, I believe that courts, not employers, should determine whether there is an implied agreement to arbitrate. That the employer told its employees continued employment would constitute acceptance, or that the employer gave the employee a reasonable period of time to consider whether to sign an arbitration agreement, is evidence that may support a finding the parties entered into an implied agreement. But it is not the only evidence a trier of fact can consider. The majority's decision takes from courts the power to determine whether (the party seeking to compel arbitration has met its burden of proving) the evidence shows an implied agreement to arbitrate, because the decision gives employers the unilateral power to create an implied agreement simply by announcing that continued employment will constitute acceptance, no matter how strongly or clearly the employee manifests his or her rejection of the proposed agreement. Carr's memorandum stated that continuing

10

to work for Sohnen would "be viewed" as acceptance. The issue for me is, "viewed" by whom? I believe the "viewer" should be the court, not the employer.

Because in my opinion the majority applies the wrong standard of review and does not give sufficient deference to the trial court's resolution of the factual issues in this case, I respectfully dissent.


SEGAL, J.

11